UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KHARVELL LEWIS,

     Plaintiff,

                                  Case No. 23-cv-10326

v.                                Hon. Matthew F. Leitman

TURNWALD *et al.*,

     Defendant.

_____/

**ORDER (1) OVERRULING DEFENDANTS' OBJECTIONS (ECF No. 63) TO REPORT AND RECOMMENDATION (ECF No. 62) AND ADOPTING RECOMMENDED DISPOSITION OF REPORT AND RECOMMENDATION; (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 50); AND (3) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 45)**

*Pro se* Plaintiff Kharvell Lewis is a state inmate in the custody of the Michigan Department of Corrections (the "MDOC"). In this action, Lewis brings claims under 42 U.S.C. § 1983 against two officials employed by the MDOC, Prison Counselor Cody Turnwald and Corrections Officer Emilio Bailey. (*See* Compl., ECF No. 1.) Lewis claims that after an altercation with another inmate, Turnwald and Bailey used excessive force against him in violation of the Eighth Amendment in two instances. First, Lewis claims that Turnwald "st[u]ck his finger in [Lewis's] right eye socket and twisted [Lewis's] head all in one motion causing serious injury" (the "Eye Gouge Technique") while Lewis was "compl[ying] with his orders and [had]

1

allow[ed] [Turnwald] to [hand]cuff" him (the "Eye Gouge Claim"). (*Id.*, PageID.3.) Second, Lewis claims that when Turnwald and Bailey were escorting him to segregation after the altercation, they "forced [him] to walk hunched over and started twisting [his] wrist in the opposite direction which also caused injury that left [his] wrist and hands swollen and in pain for ten days" (the "Escort Claim"). (*Id.*)

The parties filed cross-motions for summary judgment. (*See* Lewis Mot., ECF No. 45; Defs.' Mot., ECF No. 50.)  The assigned Magistrate Judge then issued a Report and Recommendation (the "R&R") in which he recommended denying Lewis's motion. (*See* R&R, ECF No. 62.)  The Magistrate Judge also recommended granting in part and denying in part the Defendants' motion as follows.  He first recommended that the Court grant the motion with respect to all claims against Bailey on the basis that, as Lewis conceded, Bailey was not actually involved in either the Eye Gouge Claim or the Escort Claim.  The Magistrate Judge next turned to the portion of the motion seeking summary judgment on the claims against Turnwald.  The Magistrate Judge recommended that the Court grant the motion to the extent that it sought summary judgment on the claims against Turnwald in his official capacity and on the Escort Claim.   The Magistrate Judge further recommended that the Court deny the motion to the extent that it sought summary judgment in favor of Turnwald on the Eye Gouge Claim.  Finally, the Magistrate

Judge recommended that the Court deny the motion to the extent it sought summary judgment on the basis that Turnwald is entitled to qualified immunity.

The Defendants have now filed two objections to the R&R. (*See* Obj., ECF No. 63.)   First, they contend that the Magistrate Judge erred by not "properly consider[ing] the weight of the factual findings" made by an Administrative Law Judge following a misconduct hearing on disciplinary charges brought against Lewis related to the altercation that ultimately led to his interaction with Turnwald. (*See id.*, PageID.513-517.)   According to Defendants, the Magistrate Judge should have given those findings preclusive effect in this action. (*See id.*)

Second, the Defendants argue that the Magistrate Judge erred when he found that the evidence presented by Lewis, when construed in his favor, was sufficient to create a material factual dispute on the Eye Gouge Claim. (*See id.*, PageID.518-521.) The Court will consider the objections separately below.

Before turning to the Defendants' specific objections, the Court highlights that while the Defendants moved for summary judgment on the basis of qualified immunity, they do not object to the portion of the R&R recommending that the Court deny qualified immunity.   Therefore, the question of qualified immunity is not before the Court.

3

## I

The factual background of this case is fully set forth in the R&R. (*See* R&R, ECF No. 62.)   Because there were cross-motions for summary judgment, the Magistrate Judge separately set forth the factual background in the light most favorable to each party.   As the Defendants, alone, objected to the R&R, the Court adopts the factual background set forth by the Magistrate Judge in the light most favorable to Lewis and sets forth below only the facts necessary to understand the Court's ruling on the Defendants' objections.

## A

On January 6, 2022, Lewis was involved in an altercation with two other inmates, Berry and Campbell, in the laundry room of their facility. (*See* Compl., ECF No 1; Lewis Dep. at 18:3-19:24, PageID.368.)   Turnwald entered the laundry room to attempt to stop the altercation.   After the altercation ended, Turnwald performed the Eye Gouge Technique on Lewis. (*See* Lewis Aff., ECF No. 45, PageID.198-199; Berry Aff., ECF No. 45, PageID.188.)   Lewis claims that Turnwald did so while he (Lewis) was "cuffed and noncombative." (Grievance, ECF No. 45, PageID.189.)   Berry likewise attests that "Lewis was not combative or resisting at the time" Turnwald used the Eye Gouge Technique on Lewis. (Berry Aff., ECF No. 45, PageID.188.)

Lewis claims that the Eye Gouge Technique caused "extreme pain to his right eye, neck and face." (Lewis Aff. at ¶ 4, ECF No. 45, PageID.199.)  Lewis also sought medical care on several occasions after the Eye Gouge Technique was performed on him. (*See id.* at ¶¶ 6-7, PageID.199-200; MDOC Kite Responses, ECF No. 45, PageID.190, 194; MDOC Med. Recs., ECF No. 45, PageID.191-193.)  He adds that as a result of the Eye Gouge Technique, the "vision" in his "right eye" became "a little blurry." (Lewis Dep. at 45:7-11, ECF No. 50-6, PageID.372.)  He says the MDOC "scheduled [him] an appointment with the optometrist so [he] could acquire glasses," and that the glasses corrected the blurriness caused by the Eye Gouge Technique. (*Id.*)

## B

After Turnwald performed the Eye Gouge Technique, Turnwald and another MDOC employee escorted Lewis to administrative segregation.[1]  Lewis claims that during that escort, and while he remained handcuffed, Turnwald was "forcefully holding onto [Lewis's] arms, while forcefully twisting his wrists, hands and fingers, while [Lewis] was hunched over[.]" (Lewis Aff. at ¶ 5, ECF No. 45, PageID.199.)  Lewis claims that his right wrist and hand were injured as a result of the force applied by Turnwald. (*Id.* at ¶ 6.)  He says that he received an "ACE wrap bandage," "an ice

---

[1] While Lewis initially claimed Bailey was the other official involved in the escort, he now appears to concede that Bailey was not involved in the escort, and was instead a bystander during the escort. (*See* Resp., ECF No. 58, PageID.406-407.)

pack" and "some generic pain pills." (Lewis Dep. at 45:3-6, ECF No. 50-6, PageID.372.)

### C

On December 27, 2022, Lewis filed this action in the United States District Court for the Western District of Michigan. (*See* Compl., ECF No. 1.) Lewis's Complaint asserted the Eye Gouge Claim and the Escort Claim against Turnwald and Bailey under 42 U.S.C. § 1983. The action was transferred to this Court on February 8, 2023. The Court then referred all pre-trial matters to the assigned Magistrate Judge. (*See* Order, ECF No. 11.)

After the close of discovery, Lewis filed a motion for partial summary judgment. (*See* Lewis Mot., ECF No. 45.) In that motion, he argued that there was no genuine issue of material fact on the Eye Gouge Claim, and he insisted that summary judgment should be granted in his favor on that claim. (*See id.*)

The Defendants also filed a motion for summary judgment. (*See* Defs.' Mot., ECF No. 50.) In their motion, the Defendants made four arguments as to why they were entitled to summary judgment. First, they argued that Bailey was entitled to summary judgment because Bailey was not one of the officers that escorted Lewis to segregation, and therefore, Lewis could not establish that Bailey was personally involved in any constitutional violation. (*See id.*, PageID.322-324.) Second, they argued that the Eye Gouge Claim and the Escort Claim failed as a matter of law as

to Turnwald. (*See id.*, PageID.324-336.)  Third, they argued that Turnwald was entitled to qualified immunity. (*See id.*, PageID.337-339.)  Finally, they argued that the claims against Turnwald and Bailey in their official capacities were barred by sovereign immunity. (*See id.*, PageID.339-340.)

On July 25, 2025, the Magistrate Judge issued the R&R with respect to both motions. (*See* R&R, ECF No. 62.)  He recommended that the Court deny Lewis' motion for summary judgment in his favor on the Eye Gouge Claim. (*See id.*)  He then recommended that the Court grant Defendants' motion in part and deny it in part. (*See id.*)  More specifically, he recommended that the Court:

- Grant the Defendants' motion with respect to all of the claims against Bailey;

- Grant Defendants' motion with respect to the Escort Claim against Turnwald;

- Grant Defendants' motion with respect to Lewis's official capacity claims;

- Deny Defendants' motion with respect to the Eye Gouge Claim against Turnwald; and

- Deny Defendants' motion with respect to their defense that Turnwald is entitled to qualified immunity.

(*See id.*)

The Defendants have now filed objections to the R&R. (*See* Obj., ECF No. 63.)  Lewis did not file objections to any portion of the R&R.  The Court therefore **ADOPTS** those portions of the disposition recommended in the R&R that were

7

adverse to Lewis: the recommendation that his motion for summary judgment be denied and the recommendation that summary judgment be granted in favor of Defendants with respect to the claims against Bailey, the Escort Claim, and the claims brought against the Defendants in their official capacity.  The Court addresses below Defendants' objection to recommendation that the Court deny their motion for summary judgment with respect to the Eye Gouge Claim against Turnwald.

## II

When a party objects to portions of a Magistrate Judge's report and recommendation, the Court reviews those portions *de novo*. *See* Fed. R. Civ. P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of the R&R to which the parties did not object. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

## III

The Court addresses each of the Defendants' objections separately below.

## A

The Defendants first contend that the Magistrate Judge erred by failing to give preclusive effect to factual findings made by an Administrative Law Judge (the "ALJ") following a misconduct hearing related to the altercation between Lewis, Berry, and Campbell. (*See* Obj., ECF No. 63, PageID.513-517.)  The Defendants have waived this argument because they did not make it in their motion for summary

judgment, and instead raised it for the first time in their objections to the R&R. *See Morgan v. Trierweiler*, 67 F.4th 362, 367 (6th Cir. 2023) (noting that "issues raised for the first time in objections to a magistrate judge's report and recommendation are deemed waived" (cleaned up) (quoting *Murr v. United States*, 200 F.3d 895, 902 n. 1 (6th Cir. 2000))); *Odell v. Kalitta Air, LLC*, 107 F.4th 523, 532–33 (6th Cir. 2024). While the Defendants did mention the misconduct proceedings in the factual background of their response to Lewis's motion, (*see* Resp., ECF No. 48, PageID.227-230), at no point in their briefing on either of the cross-motions did they make the legal argument that any of the ALJ's factual findings were entitled to preclusive effect. Nor did they cite any of the cases that they now cite in their objections to suggest that the ALJ's factual findings are entitled to preclusive effect. Because the Defendants have waived their argument that those findings should have been given preclusive effect, their objection on that basis is **OVERRULED**.

## B

The Court now turns to the Defendants' second objection. The Defendants argue in that objection that the Magistrate Judge erred when he found that the evidence, construed in the light most favorable to Lewis, was sufficient to create a material factual dispute on the Eye Gouge Claim. (*See* Obj., ECF No. 63, PageID.518-521.) The Court disagrees.

**1**

The Eighth Amendment's ban on cruel and unusual punishment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). A claim for violation of the Eighth Amendment has two components: one objective and one subjective. *See Johnson v. Sootsman*, 79 F.4th 608, 615 (6th Cir. 2023). The Sixth Circuit recently described the two components and the inquiry that a district court must conduct for an excessive force claim under the Eighth Amendment as follows:

> The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Supreme Court has long held that the Fourteenth Amendment incorporates the Eighth Amendment's ban on "cruel and unusual punishments" against the States. *See Robinson v. California*, 370 U.S. 660, 666–67, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962); *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463, 67 S.Ct. 374, 91 L.Ed. 422 (1947) (plurality opinion). The Court has also long held that this ban does not just cover the formal "punishment" that a state court metes out to criminal defendants. The ban also applies to informal harms that prison officials inflict on convicted prisoners during their terms of incarceration. The Eighth Amendment thus regulates the force that prison guards use on prisoners, *see Whitley v. Albers*, 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), the medical care that prison doctors provide prisoners, *see Estelle v. Gamble*, 429 U.S. 97, 102–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and the physical facilities in which prison administrators house them, *see Rhodes v. Chapman*, 452 U.S. 337, 345–47, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). In each setting, the ban on cruel and unusual punishments prohibits the

"unnecessary and wanton infliction of pain" on prisoners. *Hudson [v. McMillian*,] 503 U.S. [1,] 5 [(1992)], 112 S.Ct. 995 (quoting *Whitley*, 475 U.S. at 319, 106 S.Ct. 1078); *see also Rhodes*, 452 U.S. at 346, 101 S.Ct. 2392.

What qualifies as the "unnecessary and wanton infliction of pain"? This requirement has objective and subjective components, both of which follow from the Eighth Amendment's text. *See Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021); *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Objectively, harm to a prisoner must rise to a sufficiently serious level because the Eighth Amendment prohibits only "cruel and unusual" deprivations, not just uncomfortable or "even harsh" ones. *Rhodes*, 452 U.S. at 347, 101 S.Ct. 2392; *see Phillips*, 14 F.4th at 534. Subjectively, harm to a prisoner must result from a prison official's sufficiently volitional actions because the Eighth Amendment bars only willful conduct that "inflict[s]" "punishment," not accidental conduct that causes injury. *See Phillips*, 14 F.4th at 535 (citing *Wilson v. Seiter*, 501 U.S. 294, 300, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).

Yet the nature of these objective and subjective tests "varies" depending on the type of action (or inaction) that injures a prisoner. *Hudson*, 503 U.S. at 5–6, 8–9, 112 S.Ct. 995.

\*\*\*

As a subjective matter, the Court has held that prisoners who challenge a correctional officer's use of force must prove more than that the officer acted with "deliberate indifference" to whether the force was necessary (the type of intent that prisoners must prove to challenge their conditions of confinement or medical care). *See id.* at 5–6, 112 S.Ct. 995; *cf. Wilson*, 501 U.S. at 302–03, 111 S.Ct. 2321. The Court has instead described the "core judicial inquiry" in this use-of-force context as distinguishing

11

between force used in a "good-faith effort to maintain or restore discipline" and force used "maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010) (per curiam) (quoting *Hudson*, 503 U.S. at 7, 112 S.Ct. 995). Only the latter kind of force—force exerted maliciously and sadistically to inflict pain—violates the Eighth Amendment. *See Hudson*, 503 U.S. at 5–7, 112 S.Ct. 995. So even if an officer uses force because of an "unreasonable" belief that it is necessary to restrain a prisoner, the officer does not violate the Eighth Amendment. *Whitley*, 475 U.S. at 324, 106 S.Ct. 1078.

As an objective matter, the Court has held that prisoners who challenge a correctional officer's use of force need not prove "extreme" or "serious" harms (the types of harms that prisoners must allege to challenge their conditions of confinement or medical care). *See Hudson*, 503 U.S. at 9, 112 S.Ct. 995. The Court reasoned that the Eighth Amendment's "contextual" objective element relies on our "contemporary standards of decency" to decide whether specific conduct qualifies as cruel and unusual. *Id.* at 8, 112 S.Ct. 995 (quoting *Estelle*, 429 U.S. at 103, 97 S.Ct. 285). And the malicious and sadistic infliction of pain violates these contemporary standards whether or not the pain leads to any significant injury. *Id.* at 9, 112 S.Ct. 995. After all, "diabolic" torture sometimes may not cause such an injury. *Id.* At the same time, the Court has added a limiting principle to this conclusion by differentiating an *injury* from the *force* that causes it. *See Wilkins*, 559 U.S. at 38, 130 S.Ct. 1175. Although the Eighth Amendment can reach minor injuries caused by significant force, the Court explained, the amendment simply does not apply to "*de minimis* uses of physical force" so long as this force does not repulse "the conscience of mankind." *Hudson*, 503 U.S. at 9–10, 112 S.Ct. 995 (citation omitted).

*Id.* at 615–16.  Finally, the Sixth Circuit has also explained that in the "use-of-force context, the Supreme Court has applied a more demanding subjective test but a more relaxed objective test." *Id.*

### 2

The Court agrees with the Magistrate Judge that, when viewed in the light most favorable to Lewis, the evidence in support of the Eye Gouge Claim is sufficient to create a material factual dispute on both the objective and subjective components of an Eighth Amendment violation.

### a

The Court begins with the subjective component of the Eye Gouge Claim.  In determining whether a use of force was exerted "maliciously and sadistically to inflict pain" in violation of the Eighth Amendment, courts consider four factors: (1) the "extent of the prisoner's injury"; (2) the "nature of the threat that justified the use of force"; (3) whether the "amount of force [was] proportional to the threat"; and (4) whether the officer took "any actions designed to reduce the required amount of force." *Johnson*, 79 F.4th at 618.  The Court concludes that the evidence, when viewed in the light most favorable to Lewis, is sufficient to create a material factual dispute as to whether Turnwald's use of the Eye Gouge Technique was a malicious and sadistic infliction of pain under the four factor-test.

**i**

The Court first considers the extent of Lewis's injury.  Lewis says that Turnwald's use of the Eye Gouge Technique caused him "excruciating" and "extreme" pain. (Grievance, ECF No. 45, PageID.189; Lewis Aff. at ¶ 4, ECF No. 45, PageID.199.)  And he claims that he has had to "constantly have his right eye examined due to constant redness, swelling and lack of vision, which was blurry most of the time." (Lewis Aff. at ¶ 6, ECF No. 45, PageID.199-200.)  Finally, he says that due to Turnwald's use of the Eye Gouge Technique, he requires eyeglasses to allow him to see properly. (*See id.* at ¶ 7, PageID.200.)  While this evidence does not establish that Lewis suffered a serious or permanent physical injury, it is sufficient to establish that Turnwald "actually harmed" Lewis, and that could "lead a reasonable jury to conclude that [Turnwald] intended to harm [Lewis]." *Erickson v. Gogebic Cnty., Mich.*, 133 F.4th 703, 709 (6th Cir. 2025).  Thus, the extent of injury factor weighs at least somewhat in favor of a finding that Turnwald applied force maliciously or sadistically.

**ii**

The Court next considers the second and third factors – the nature of the threat that purportedly justified the use of the Eye Gouge Technique and the extent to which the amount of force was proportional to the threat.  Lewis has submitted an affidavit from Berry, one of the other inmates involved in the altercation.  In that

affidavit, Berry says that Lewis was "not combative or resisting at the time" that Turnwald performed the Eye Gouge Technique on Lewis. (Berry Aff., ECF No. 45, PageID.188.)  Further, Lewis wrote in a grievance that Turnwald performed the Eye Gouge Technique while he (Lewis) was "still cuffed and noncombative." (Grievance, ECF No. 45, PageID.189.)  This evidence, when construed in the light most favorable to Lewis, suggests that Turnwald did not face any meaningful threat at the time he applied force and that his application of force was not proportional to any threat.  Thus, the second and third factors weigh in favor of a finding that Turnwald applied force sadistically and maliciously.

### iii

Finally, the Court considers any actions taken by Turnwald to reduce the required amount of force or temper the severity of the force used.  The evidence, when taken in the light most favorable to Lewis, does not reveal that Turnwald made any efforts to reduce or temper the amount of force he used when he used the Eye Gouge Technique.  Thus, this factor also weighs in favor of a finding that Turnwald applied force sadistically and maliciously.

### iv

For the reasons explained above, the Court finds that there is a material factual dispute as to whether Turnwald applied force maliciously and sadistically.  Thus,

Turnwald is not entitled to summary judgment based upon his contention that Lewis

cannot satisfy the subjective component of the Eye Gouge Claim.

**v**

The Defendants counter with two primary arguments.  First, they say Lewis

admitted that Turnwald performed the Eye Gouge Technique in response to an

ongoing threat and not while Lewis was handcuffed and compliant.  They base this

argument on their reading of Lewis's affidavit:

> In fact, Plaintiff's [affidavit] specifically stated, while "he
> was involved in an altercation with another inmate . . . And
> during that incident . . . Defendant Turnwald assaulted and
> battered  Plaintiff  and  unnecessary,  unprovoked  and
> excessive force upon him by forcefully placing his middle
> finger  into  Plaintiff's  right  eye  socket  and  forcefully
> twisting his head away[.]" (ECF No. 45, PageID.198-199.)
> This clearly indicates this happened "during that incident"
> while Plaintiff "was involved in an altercation."

(Obj., ECF No. 63, PageID.520, quoting Lewis Aff. at ¶ 4, ECF No. 45, PageID.198-

199.)

The Court rejects this argument because Defendants' reading of Lewis's

affidavit does not take his affidavit in the light most favorable to Lewis.  Their

reading ignores parts of the same section of the affidavit in which Lewis suggests

that force was applied after the altercation had concluded and while he was not

resisting.  For example, in the same paragraph of the affidavit cited by Defendants,

Lewis explains that he addressed Turnwald's application of force in his original

Complaint. (*See* Lewis Aff. at ¶ 4, ECF No. 45, PageID.198-199.)  Notably, in the

Complaint, Lewis clearly indicated that Turnwald applied the Eye Gouge Technique

after the altercation had concluded and while he (Lewis) was not resisting. (*See*

Compl., ECF No. 1, PageID.3.)  In addition, the Defendants ignore that Lewis says

that Turnwald's use of the Eye Gouge Technique was "unnecessary, unprovoked

and excessive force" – a statement that suggests it was *not* performed while he was

actively engaged in an altercation.  (Lewis Aff. at ¶ 4, ECF No. 45, PageID.199.)

Finally, Defendants ignore Lewis's statement in his grievance in which he said that

Turnwald performed the Eye Gouge Technique while he (Lewis) was "still cuffed

and noncombative." (Grievance, ECF No. 45, PageID.189.)  In light of all of this

evidence, there is at least a factual dispute as to whether Lewis admitted that

Turnwald used the Eye Gouge Technique while the altercation was ongoing and

while Lewis still posed a threat.

Second, the Defendants counter that Lewis cannot satisfy the subjective

component of the Eye Gouge Claim because Lewis has admitted that Turnwald

subjectively believed he was acting in good faith when he performed the Eye Gouge

Technique.  In support of that argument, they cite a portion of Lewis's partial motion

for summary judgment in which Lewis writes, "[Turnwald] still feels or thinks that

his actions, inactions and/or omissions were acted in a good faith effort to maintain

or restore discipline." (*Id.*, PageID.520, quoting Lewis Mot., ECF No. 45, PageID.177.)

The Court does not share Defendants' view that this passage from Lewis's motion is an admission that Turnwald acted with a good faith belief that application of the Eye Gouge Technique was necessary and appropriate. Indeed, the Defendants take Lewis's statement out of context. When read in context, it is clear to the Court that Lewis was describing Turnwald's current legal position in these proceedings and was not making any admissions about Turnwald's actual state of mind at the time he used the Eye Gouge Technique. Moreover, in Lewis's motion (and throughout this action), Lewis has maintained that Turnwald's use of force was "not applied in a good faith effort to maintain or restore discipline, but was rather malicious and sadistic to cause harm because the fight between [Lewis] and the other inmate had already been abated[.]" (Lewis Mot., ECF No. 45, PageID.181.) For all of these reasons, the Court is not persuaded that the statement identified by the Defendants is an admission by Lewis that, at the time Turnwald used the Eye Gouge Technique, he believed was acting in good faith.

### b

The Court next turns to the objective component of the Eye Gouge Claim. The Defendants argue that Lewis cannot satisfy this component of his claim because

his injury was not sufficiently serious. (*See* Obj., ECF No. 63, PageID.518.)  The Court disagrees with the Defendants' application of the objective standard.

Lewis does not need to show that he suffered a serious injury in order to satisfy the objective component of his claim.  Indeed, where, as here, the evidence is sufficient to support a finding that a defendant applied force in a malicious and sadistic way, "a prisoner need not establish that the force caused any 'significant injury' as an objective matter." *Erickson v. Gogebic Cnty., Mich.* 133 F.4th 703, 709 (6th Cir. 2025) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)).  Instead, under these circumstances, the focus is on the amount of force used; courts "differentiat[e] an *injury* from the *force* that causes it." *Johnson*, 79 F.4th at 616 (emphasis in original).  "*De minimis* uses of physical force" rarely establish the objective component, *see Erickson*, 133 F.4th at 709, particularly when the prisoner has no "objectively verifiable injury." *Johnson*, 79 F.4th at 617.  But the objective component of an Eighth Amendment claim may be satisfied where a prisoner suffers "minor injuries caused by significant force[.]" *Johnson*, 79 F.4th at 616 (quoting *Hudson*, 503 U.S. at 9–10).

Thus, the proper focus of the objective component here – where, again, the evidence viewed in the light most favorable to Lewis is sufficient to establish that Turnwald maliciously applied force – is on the amount of force applied and whether that force caused at least a minor injury.  That evidence, viewed in the light most

favorable to Lewis, establishes that Turnwald applied a meaningful amount of force. Lewis alleges Turnwald jammed his finger into Lewis's eye with enough force to cause "extreme" and "excruciating" pain. (Grievance, ECF No. 45, PageID.189; Lewis Aff. at ¶ 4, ECF No. 45, PageID.199.)  Moreover, Lewis suffered at least a minor injury – he had lasting blurred vision for which he was prescribed eyeglasses. (*See* Lewis Aff. at ¶ 7, ECF No. 45, PageID.200.)  On these facts, the Court cannot conclude, as a matter of law, that Lewis fails to satisfy the objective component.

Accordingly, the Defendants' objection related to the Eye Gouge Claim is **OVERRULED**.

## IV

For all of the reasons explained above, **IT IS HEREBY ORDERED AS FOLLOWS**:

- The Defendants' objections to the R&R (ECF No. 63) are **OVERRULED**, and the Court **ADOPTS** the recommended disposition of the R&R (ECF No. 62);

- Lewis's motion for partial summary judgment (ECF No. 45) is **DENIED**; and

- Defendants' motion for summary judgment (ECF No. 50) is **GRANTED IN PART** and **DENIED IN PART** as follows: The motion is **GRANTED** to the extent that the Defendants seek summary

20

judgment on all of the claims against Bailey, the Escort Claim against Turnwald, and the official capacity claims.  The motion is **DENIED** to the extent that the Defendants seek summary judgment on the Eye Gouge Claim against Turnwald.  Finally, the motion is **DENIED** to the extent that the Defendants seek summary judgment based upon qualified immunity.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 8, 2025

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 8, 2025, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126